JANVIER, Judge.
The Sewerage and Water Board filed this suit against Dominic Bertucci and against the National Surety Corporation (at first incorrectly styled National Surety Company) on a contract bond which it had executed to guarantee the faithful performance by Bertucci of a contract which he and the Sewerage and Water Board had entered into for the removal by Ber-tucci of large quantities of sand and silt from certain reservoirs at the purification plant of the Board in New Orleans.
The Board alleges that in the performance of the work contemplated by the contract Bertucci had damaged a Paige metal fence, which is an expensive type of fence, alongside the said plant. On this item the Board claimed the sum of $974.02, which is admittedly the amount made necessary to repair the damage sustained by the fence. In addition to the said amount claimed as damage sustained by the fence, the Sewerage and Water Board also prayed for judgment against Bertucci alone in the sum of $105.58, alleging that to be the amount necessary to repair a fire hydrant of the Board in another part of the City of New Orleans which sustained damage as the result of having been struck by a crane of Ber-tucci. The damage to the hydrant was in no way associated with the carrying out of the contract for the removal of sand and silt. There is no dispute over this item since Bertucci admits his liability to the Board. It is conceded that the surety is in no way responsible therefor.
To the demand for reimbursement for damage done to the fence Bertucci and the Surety Company filed exceptions of vagueness directed at the fact that the petition of the Board did not allege either the date or the time at which the fence was damaged. As a result of these exceptions plaintiff was ordered to amend its petition and did so by alleging:
“That plaintiff is not in a position to state definitely when this damage was done, except to say that the damage was done gradually from the time the sand and silt was piled adjacent and upon said fence until such time as the sand and silt was removed and the damage was discovered.”
Bertucci and National Surety Corporation then filed a plea of prescription of one year and an answer in which they admitted the execution of the contract between Bertucci and the Sewerage and Water Board, but denied that Bertucci had caused any damage to the fence. The defendants then alleged that Bertucci had obtained from National Casualty Company a policy of liability insurance indemnifying Bertucci “against any loss occasioned by the operation of his business and equipment.” The defendants then prayed that National Casualty Company be made defendant in warranty, and that in the event any judgment should be rendered against Bertucci, there should be judgment in warranty against National Casualty Company. The defendants, Bertucci and National Surety Corporation, then alleged that before the contract which Bertucci had with the Board for the removal of the sand *379 and silt was completely carried out, Ber-tucci had made a contract with Gulf States Construction Co., Inc., under which that corporation agreed to remove from the premises of Sewerage and Water Board the sand and silt which Bertucci had removed from the reservoirs and had stored or “stock-piled” on the said premises, and that in the contract, under which Gulf States Construction Co., Inc., undertook to remove the said sand and silt, that ■corporation had warranted it would hold Bertucci harmless and protect him from any damage occasioned to the property of the Sewerage and Water Board, which damage might result during the removal of the mound of sand and silt.
Bertucci and National Surety Corporation then alleged that such damage as had "been sustained by the fence, if any, “was occasioned by the negligence of the said ■Gulf States Construction Company, Inc., in removing the mound of sand and silt, over which respondents had no control - or supervision.”
To this call in warranty against National Casualty Company, that company answered, admitting the execution of a liability insurance policy to Bertucci, but averring that the policy had not come into effect until February 6th, 1950, which was sometime after Bertucci had completely terminated operations under the contract with the Sewerage and Water Board. National Casualty Company also averred that it had no notice of any damage which may have been sustained by the fence, and thát accordingly it could not be held liable under, its policy of liability insurance, even if it could be held that that policy was in force and effect at the time the damage was sustained.
Gulf States Construction Company, Inc., filed answer to the call in warranty, admitting that it had entered into a contract with Bertucci under which it had taken, over the contract which Bertucci had had with the Sewerage and Water Board, and that it had removed the sand and silt which Bertucci had “stock-piled” alongside the reservoirs,' but averring that any damage which may have been., sustained by the fence had been already caused by Bertucci “by placing sand and silt against the. Paige galvanized chain link fence and that the said damage was not caused by the defendant in warranty.”
On these issues and on the additional issue of whether the prescription of one year was applicable, the matter went to trial in the Civil District Court for the Parish of Orleans, and during the course of the trial it developed that when Ber-tucci entered into the contract with Gulf States Construction Company, Inc., by which that corporation agreed to take ove'r the removal of the sand and silt which Bertucci had “stock-piled” on the property of the Sewerage and Water Board, a certain agreement had been made between Bertucci and Sewerage and Water Board which Bertucci and National Surety Corporation claimed -had completely relieved them, both Bertucci and National Surety Corporation, from all possible liability for such a claim as is presented by this suit for the damage to the fence.
Counsel for Sewerage and Water Board objected to the introduction of any evidence touching upon any such agreement, on the ground that it had not been pleaded as a defense or even referred to in the answer of defendants, and that it completely changed the issue .on which the matter went to trial. On this objection the District Judge made the following ruling:
“ * * * Here is a contract which wasn’t pleaded. He didn’t think it was sufficiently important to- tell his attorney about it. I permitted it in the record to enlarge the pleadings in the interest of justice, and- now I am going to permit his thorough cross-examination. I don’t think the contract is any too clear. I can give it interpretation myself.”
After a lengthy trial, there was judgment in favor of Sewerage and Water Board against Bertucci in the sum of $1,079.60, with interest and costs. There was further judgment in favor of National Surety Corporation dismissing the suit as to that corporation. There was further judgment dismissing the call in warranty made by Bertucci and National *380 Surety Corporation against Gulf States Construction Company, Inc., and there was further judgment in favor of National Casualty Company dismissing the call in warranty made against it. From this judgment Bertucci appealed devolutively and suspensively. The Sewerage and Water Board also appealed from the judgment insofar as it dismissed its suit against National Surety Corporation.
We shall first eliminate those questions which were put at issue by the pleadings, but on which there is no longer any controversy.
In the first place, it is very evident that National Casualty Company cannot be held liable in warranty even if Bertucci should be held liable for damage to the fence. We say this for the reason that the policy of liability insurance which was issued by National Casualty Company to Bertucci did not become effective, by its own terms, until February 6th, 1950, whereas all work which Bertucci did under his contract with Sewerage and Water Board terminated about one month before that time. In the second place, there is no longer any dispute as to the cost of the necessary repairs to the fence. It is stipulated by all parties that this cost of repairing the damage sustained by the fence was properly fixed by the Sewerage and Water Board at $974.02. And, in the third place, Ber-tucci admits his liability for the cost of repairing the damaged fire hydrant in another part of the city.
A clear understanding of the rather complicated facts is necessary to a determination of the most important question which is presented, i. e., by whom and when was the damage to the fence caused?
The contract between Bertucci and the Sewerage and Water Board for the removal of the sand and silt on which the National Surety Corporation was surety was dated May 2nd, 1949. Bertucci commenced the removal by making use of a dragline and he carted away a considerable portion of the silt, or sold it to others who carted it away, and then found that the remaining silt could not be profitably disposed of in this manner because, after the top or more or less hardened crust had been removed, the lower portion was in such a liquid state that it had to be taken out of the reservoirs and deposited, or, as it is called in the record, “stockpiled” on the ground until it could dry out and harden into a condition which would permit of its being removed by automobile trucks.
It was agreed by the Sewerage and Water Board that it might be “stockpiled” on the ground between the reservoirs and the Paige fence of the Sewerage and Water Board, which was about seventy feet away from the side of the reservoir, and was 438 feet in length. As this silt was being deposited, because of its semi-liquid condition, it spread or “oozed” over the ground, and, as more and more of it was piled upon what had already been deposited, it spread from the reservoir to the fence and gradually enveloped the entire fence. And though there is some evidence to the contrary, we think that the record shows that when Bertucci discontinued operations, which was between January 6th and 10th, 1950, the fence over its entire length was practically completely enveloped in this semi-liquid and hardened silt.
At this stage, which was during the first week or ten days of January, 1950, Bertucci advised the Sewerage and Water Board, in writing, that he desired to terminate operations, and, by agreement made with the Sewerage and Water Board, he was permitted to sell to Gulf States Construction Company, Inc., all of the stock-piled silt which that company agreed to remove and for which it agreed to pay Bertucci. Gulf States Construction Company commenced operations, and at the conclusion thereof, when all of the silt had been removed, the extent of the damage to the fence became apparent.
On January 17th, 1951, which was more than one year after the execution of the agreement by which Bertucci was relieved of the obligation to continue further operations, this suit was filed by the Board against Bertucci and National Surety Corporation.
The plea of prescription of one year, which was filed by the defendants, is *381 based on the fact that the suit was not filed until more than one year after Ber-tucci had discontinued operations, and the argument is made that, even if he caused the damage, it must have been sustained while he was operating under the contract and therefore must have been caused more than one year before the suit was filed.
On this issue the contention of the plaintiff is twofold: In the first place, it is maintained that the suit is not based on tort but on contract, since in the contract with Bertucci there were two provisions, under either or both of which it was made the contractual obligation of Bertucci to be responsible for or to repair any such damage. Those contractual provisions read as follows:
“The contractor shall be held responsible for and shall make good any damage to the property of the Sewer-' age and Water Board that may be caused, either by himself or any of his employees, during the execution of his work.”
“After finishing work the contractor shall restore any disturbed property to its original condition.”
In the second place, it is contended by plaintiff that the prescription relied on by defendants did not begin to run until it was possible for plaintiff to have discovered the damage which had been sustained by its fence and that such discovery could not have been made until the silt was removed, which was long after the termination of operations by Bertucci and well within the year previous to the filing of the suit.
The evidence as to when the damage was sustained and as to when it was discovered leaves us convinced that it was caused by Bertucci, who continued to “stock-pile” the semi-liquid silt in such position that it continued to ooze through the wire meshes of the fence. We think it would serve no useful purpose to discuss in detail the tremendous amount of testimony on this point.
As to when it was discovered, there is some evidence which tends to show that employees and officials of the Sewerage and Water Board were aware of the fact that damage was being sustained by the fence while Bertucci was continuing to stock-pile the-silt alongside it, but we are convinced from the record that the actual damage was discovered and could not have been discovered until the silt was removed several months later by Gulf States Construction Company, Inc.
Mr. Frank Haas, the technical engineer of the Sewerage and Water Board in charge of the Water Purification Plant of the Board, describes the process by which the fence was damaged as follows:
“It (the silt) was fairly fluid in the beginning and then it oozed through the mesh of the fence, and then that became hardened, and as he piled more on that it was sort of a still blanquet that carried the fence down with it.”
He was asked:
“When did you first discover the extent of the damage to your fence, Mr. Haas?”
He answered:
“We didn’t really realize how bad it was damaged until the operation and removal of it was completed by the Gulf States Construction Company.”
The trial judge then said:
“What you are trying to tell me is that the damage to the fence was done before they started to remove it. Wasn’t it hardened?”
And Mr. Haas answered:
“Yes, that’s true, and we couldn’t tell the extent of the damage until after they got it.”
Mr. Conrad J. Oberling, the reservoii* foreman, says that when the stock pile was finally removed by Gulf States Construction Company, Inc., the fence “was completely down and mashed beyond repair.” He was asked:
“When were you able to determine the condition of your fence?”
and he answered:
“Well, we couldn’t determine anything until the Gulf States people started moving the silt and sand from the fence. That’s when we saw the fence was down there all mashed up.”
*382 Mr. W. N. Nail, an official of Gulf States Construction Company, says that when his company took over the job of removing the stock pile, “the fence was completely covered up in great length with earth,” and later, when asked whether he could see that the fence was damaged when his company took over the work, he answered :
“Well, 'I’ll tell you, the fence, you couldn’t tell how bad it was damaged. * * *»
As a result of our conclusion that, because the fence was entirely covered with silt when Bertucci discontinued operations, the extent of the damage could not be discovered. We further conclude that prescription, even if it be conceded that the prescription of one year otherwise would have been applicable, did not commence to run until the damage was discovered. In contending that prescription did not commence to run until the discovery of the damage, counsel for plaintiff relies upon 'Article 3537 of our LSA — Civil Code, which provides that where land, timber or property has been injured, cut, damaged or destroyed, the prescription which is effective in matters growing out of offenses and quasi offenses, commences to run “from the date knowledge of such damage is received by the owner thereof.”
The principle on which this article is based is similar to that on which is based the doctrine contra non valentum agere mulla currit praescriptio. In other words, surely’where a person causes damage and does acts which intentionally or otherwise •prevent the discovery of the damage, prescription cannot commence to run until the damage is discovered.
Since the damage was done by Bertucci and since the plea of prescription is not well founded, it becomes necessary to consider the very interesting question" which was presented when there- was offered in evidence the agreement which was made by the Sewerage and Water Board with Bertucci when the Sewerage and Water Board consented to the termination of Bertucci’s contract . and permitted Gulf States Construction Company, Inc., to take over the contract for the removal of the silt.
It is ■ contended by defendants that, as a result of that agreement, any liability for the damage to the fence was settled and compromised. Plaintiff, on the other hand, maintains first, that that agreement, if it could be interpreted as terminating any liability for the damage to the fence, is inadmissible for the reason that to admit it would be to permit the defendants to change entirely the issues on which the matter went to trial; that the issue as joined by the pleadings was whether or not the damage had been caused by Ber-tucci, whereas the defense presented by the offer of the agreement now under consideration was not that Bertucci did not cause the damage, but that for such damage as may have been caused, a settlement has been effected.
Plaintiff also maintains that even if the agreement in question is admissible, a proper interpretation of it shows that a settlement of liability for damage to the fence was not contemplated by the parties to the agreement.
Let us see just what was the wording of that agreement. On January 10th, 1950, Bertucci addressed to the Sewerage and Water Board a letter in which he requested a cancellation of his contract for the removal of the silt. Among other things in that letter, he said:
“ * * * I request a cancellation of this contract immediately and the release of my Surety, National Surety Corp., from further liability therein, and in consideration therefor I shall pay your Board the sum of Five Plun-dred Dollars ($500.00), cash, as liquidated damages.” ,
******
“I will personally remain responsible for any damages, personal or property, which I may have caused to third persons as a result of my operations under this contract; this is particularly true with reference to claims made by property owners that their property has been damaged as a result of my activity in dumping sand in the vicinity of the reservoirs. In that connection, I am *383 this day depositing with you my check in the sum of Fifteen Hundred Dollars ($1500.00), to serve as a guarantee to pay any and all claims of third persons.”
On that same day the General Superintendent of the Sewerage and Water Board accepted the proposal of Bertucci in writing, saying:
“The offer is hereby accepted under its terms and conditions. Receipt of Five Hundred Dollars ($500.00), in cash, as liquidated damages, is acknowledged, and payment for all sand removed from the said reservoirs at the rate of five cents (5^) per cubic yard amounting to One Thousand, Forty-two and 40/100 Dollars, ($1,042.40) is also acknowledged. Said sand is to be removed from premises of Board within thirty (30) days from date hereof.
“The said Contract is hereby can-celled and shall be of no further force or effect. The National Surety Corp., Surety thereon, is hereby relieved of all further responsibility thereunder. Said Dominic Bertucci shall continue and remain liable and responsible personally for any damages, personal or property, which may have been caused to third parties and arising out of his activities under the above mentioned contract.”
Counsel for defendants point to the fact that, in the offer of Bertucci and in the acceptance thereof, it is provided that Ber-tucci would remain liable for damage “caused to third parties,” and argue that, since nothing was said about any possible damage which may have been sustained by the Sewerage and Water Board itself, it must have been contemplated that he, Ber-tucci, was being relieved from any further liability for that damage.
It is argued on behalf of Sewerage and Water Board that, in the first place, it was not known at that time that property of the Board had sustained damage; that furthermore the parties themselves did not contemplate that by that agreement Ber-tucci was being relieved from any liability for damage to property of the Board, and that this is made evident by the fact that the agreement was not treated as a defense, and by the further fact that Ber-tucci testified that when he discussed with his attorneys his defense to this suit, he did not consider this agreement of sufficient importance to justify telling his attorneys about it. That' Bertucci did not consider that agreement a release of that liability is further made evident by the fact that, after the silt had been removed by Gulf States Construction Company, Inc., and after Bertucci had been advised of the damage, he attempted to make the repairs to the fence and on two or three occasions sent laborers to the premises of the Sewerage and Water Board for that purpose. He did not call attention to the agreement and contend that by it he was relieved from liability.
The District Judge, in discussing the effect of that agreement, said:
“I hold that this agreement of January 10, 1950, did not and was not intended to release him for any damages that he had caused to the Sewerage and Water Board at that time, particularly with reference to that fence, * * *
It is our conclusion also that it was not contemplated by the parties- that, by that agreement, they were effecting the discharge of Bertucci from any liability which he may have had to the Sewerage and Water Board for damage sustained by the property of the Board while he was conducting operations under the original contract.
We conclude that Bertucci is liable to the Sewerage and Water Board for the cost of repairing the fence, but we think that, as a result of the agreement by which Bertucci was relieved of his obligation under the' contract and it was permitted that Gulf States Construction Company, Inc., should remove the silt, National Surety Corporation was released from all liability.
 The agreement, by its own terms expressly relieved this corporation, and furthermore unquestionably the new agreement constituted a novation made without the consent or knowledge of the surety *384 corporation. As surety on the original contract of Bertucci, National Surety Corporation was entitled to be notified of any change made in the agreement between Bertucci and the Sewerage and Water Board. When it became apparent that Bertucci would not or could not continue operations under the contract on which it was surety, it should have been called upon to determine whether it would itself undertake the completion of the work, or whether it would be advisable for it to agree that the work might be turned over to the Gulf States Construction Company. It was not afforded that opportunity to decide what was best for it, and, as a result, the new contract relieved it of all liability under the original contract.
Our conclusion is that the judgment appealed from is correct. Accordingly the judgment is affirmed at the cost of appellant.
Affirmed.