LUTHER E. HALL, Judge pro tem.
Plaintiff brought this suit against Noel Kammer, d/b/a Earthworks Service, and his insurer, Maryland Casualty Company, the Ryan Crane Service, owned and operated by James S. Ryan, Earl J. Markey and the City of New Orleans. The suit is for damages to plaintiff’s building allegedly arising out of the negligent operation of demolishing equipment used by Noel Kam-mer, d/b/a Earthworks Service, as contractor for the City of New Orleans, in the demolition of a certain church building on adjacent property. The nature of the alleged damages is cracked walls and ceilings on the inside and cracked foundations and exterior finish on the outside of plaintiff’s building.
A plea of prescription of one year under the provisions of LSA-Civil Code Article 3536 filed by the defendant, Kammer, was referred to the merits and after full trial on the merits, the District Judge rendered judgment maintaining the plea and dismissing the suit as to Kammer and his insurer on that ground, and dismissing plaintiff’s suit as to each of the other defendants on various other grounds.
Plaintiff prosecutes this appeal from the judgment maintaining the plea of prescription and dismissing his suit against Kammer and his insurer. Appellant concedes that his suit as to all other defendants has been properly dismissed.
The question presented for decision here is whether the trial court erred in maintaining the plea of prescription.
The record shows that Noel Kammer, d/b/a General Earthworks Service, contracted with the City of New Orleans to demolish the concrete slab foundation of a church that was being torn down to make way for the erection of a fire station by the City. Plaintiff’s residence was near the church and in the same block.
In carrying out his contract Kammer broke up the concrete foundation slab by lifting and dropping onto it from a crane a large and very heavy metal ball commonly known as a “headache ball”.
The record ' shows that this “headache ball” was used by Kammer on December 4, 16, 18 and 23, 1953. It is abundantly clear that the last date on which Kammer used the ball was December 23, 1953. This suit was filed on December 29, 1954.
Plaintiff Pachi testified that on the morning of December 4, 1953, the date on which the operation began, he was awakened by the sound of a heavy object that “kept falling from a good height” and that his house *419 “was shaking terribly” and he “thought it was an earthquake” and that he called his wife and sister-in-law, who resided on the premises, and was informed that someone was “trying to break the basement of the church with a big ball”.
Pachi testified that he rushed to the window and told the workmen to stop “cause it was shaking my house”. He then dressed and went outside and told them to stop, “it was causing a lot of vibration and shaking, and we couldn’t even stay in the house, because it was just vibrating, and they said no, they were ordered to do that”. He further testified that the tremors were “big enough to wake me up and scare the life out of me when I woke up. It was shaking terribly”.
On that same day, December 4, 1953, plaintiff wrote to Kammer and his insurer, Maryland Casualty Company, with a copy to the Commission Council of the City of New Orleans, in which he registered a complaint about the use of the heavy maul and stated “the terrific vibrations of this equipment can be compared with those of a tornado, and should any physical or material damage result, claim will be filed against your company and the City of New Orleans”.
As a result of plaintiff’s communication of December 4, 1953, the defendant, Maryland Casualty Company, caused an inspection to be made of plaintiff’s property by one Earl J. Markey. Mr. Markey went to the Pachi property on December 11, 1953, knocked on the door, secured admission from plaintiff’s wife and sister-in-law and made a complete inspection of the premises in their company. Mr. Markey testified that the ladies pointed out to him the damage which had been done to the premises. He further testified that he told them who he was and what he was doing and gave them his business card containing his name and address when he departed. Subsequently, Mr. Markey forwarded a written estimate of the damage he had observed to Maryland Casualty Company. He estimated the damage at $1,346, and it was his opinion that most of it had occurred on December 4, 1953, the first day the ball was used.
Plaintiff testified that he thought the damage was done on the first day but that he was very busy during December, 1953, and that he did not notice any damage until January 19, 1954; that he then called in a contractor to estimate the damage and received the estimate on February 9, 1954.
He had his attorney make demand on the defendant for the alleged damage on February 12, 1954, but testified that he actually did not learn the full extent of his damage until April 1954, when he had another estimate made by an architect.
Article 3536, LSA-Civil Code provides that actions for damages for offenses and quasi offenses prescribe in one year and Article 3537 provides that the prescription mentioned in Article 3536 where land, timber or property has been injured, cut, damaged or destroyed, commences to run from the date knowledge of such damage is received by the owner thereof.
In his written reasons for judgment the trial court said “It is the opinion of this court that the plaintiff had knowledge of the damage to his premises on December 11, 1953, when the inspection was made by Markey. The last date on which this equipment was used was December 23, 1953. As plaintiff’s suit was not filed until December 29, 1954, it is the opinion of this court that the claim was prescribed”.
It is argued on behalf of appellant, Pachi, that the prescription does not commence to run until the creditor has knowledge of the nature and extent of his damage and that he filed his suit within the year dating from the acquisition of such knowledge; citing Jones v. Texas & P. Ry. Co., 125 La. 542, 51 So. 582, and Sewerage & Water Board of New Orleans v. Bertucci, La.App., 65 So.2d 377.
*420 In the Jones case a mule was. struck on the hip by a locomotive receiving a wound which was thought to be a mere flesh wound. He was treated for this and led out- to pasture to get well. Two months later he died. The question presented to the court was whether prescription ran from the time of the accident or only from the death of the mule. Holding that prescription runs only from the date damages are sustained and not from the day of the wrongful act, the court said that while the damage to the mule was sustained as a matter of fact on the date of the accident, “it was not sustained, as a matter of law, until the death of the mule, because the fact of its having been sustained was not until then susceptible of ascertainment. In law, things which are not susceptible of ascertainment are considered as not existing.” (Emphasis added.) [125 La. 542, 51 So. 583.] The court went on to say that until the death of the mule, the damage had not been revealed and made certain and plaintiff had no cause of action for it.
The court was careful to point out however, that “The uncertainty which precludes the coming into existence of a cause of action for damages, and which therefore prevents prescription from beginning to run, must not be confounded with the inability of the plaintiff to procure the necessary evidence for establishing in court a cause of action known to exist”.
In the Bertucci case, a contractor being employed to clean out the settling basins at the water filtration plant, piled the silt and ooze removed therefrom in such a manner that it spread to and completely enveloped a Paige fence. In overruling a plea of prescription to the owner’s suit for damages for destruction of the fence, the court based its decision on the fact that “the actual damage was (not) discovered and could not have been discovered until the silt was removed several months later.” (Emphasis added.) [65 So.2d 381.]
Neither the Jones case nor the Bertucci case in pur opinion supports appellant’s argument that prescription does not commence to run until plaintiff has learned the extent of his damage. See Home Ins. Co. v. Highway Ins. Underwriters, La.App., 52 So.2d 449.
Appellant also argues that the courts incline to be very liberal towards a plaintiff in considering whether his excuse for delay in discovering, damage to his property is reasonable, citing Schwing Lumber & Shingle Co. v. Peterman, 140 La. 71, 72 So. 812; Pfister v. St. Bernard Cypress Co., 155 La. 575, 99 So. 454; and Coignet v. Louisiana Cypress Lumber Co., 177 La. 1023, 150 So. 6., While it is true that in each of these cases plaintiff’s excuse for not discovering the trespass sooner was considered reasonable, each case must stand on its own bottom factually.
In the case before us plaintiff knew on December 4, 1953, that defendant’s operations were causing his house to shake as if in an earthquake or tornado. His wife and sister-in-law pointed out the damage to Mr. Markey on December 11, 1953. .That plaintiff did not have actual knowledge of the damage by this time is difficult to believe, but at all events, he had sufficient knowledge to put him on inquiry and this is sufficient to start the running of prescription.
“Whatever is notice enough to excite attention and put [an] owner on * * * guard and call for inquiry is 'notice’ of everything to which such inquiry might have led, and such information as ought to put the owner on inquiry is sufficient to start the running of prescription.” Mayer v. Ford, La. App., 12 So.2d 618, 619.
To start the prescription running, “all that is required * * * is the acquisition of sufficient information, which if pursued, will lead to the true condition of things.” Young v. International Paper Company, 179 La. 803, 155 So. 231, 232.
*421 “Prescription commenced to ru'n when the plaintiff had sufficient knowledge to put him on inquiry and on his guard to ascertain the true facts.” (He then has one year to obtain all information and file suit.) Reymond v. Sumrall, La.App., 67 So.2d 925, 926. See also: Maxfield v. Gulf States Utilities Co., La.App., 65 So.2d 615; National Park Bank v. Concordia Land & Timber Co., 159 La. 86, 105 So. 234; Iberville Land Co. v. Amerada Petroleum Corp., 5 Cir., 141 F.2d 384.
For the reasons assigned the judgment appealed from is affirmed, plaintiff to pay all costs incurred in this Court.
Affirmed.