| | | |
|---|---|---|
| **FRANK SCURLOCK** | * | **NO. 2025-CA-0096** |
| **VERSUS** | * | |
| | | **COURT OF APPEAL** |
| **KURT HEITMEIER, ROBERT** | * | |
| **HEITMEIER AND EUSTIS** | | **FOURTH CIRCUIT** |
| **INSURANCE, INC.** | * | |
| | | **STATE OF LOUISIANA** |

\* \* \* \* \* \* \*

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2021-01440, DIVISION "N-8"
Honorable Ethel Simms Julien, Judge
\* \* \* \* \* \*
**Judge Rosemary Ledet**
\* \* \* \* \* \*
(Court composed of Chief Judge Roland L. Belsome, Judge Rosemary Ledet, Judge Paula A. Brown)

**BELSOME, C.J., DISSENTS AND ASSIGNS REASONS**

Gerald Wasserman
GERALD D. WASSERMAN, LLC
3939 North Causeway Boulevard, Suite 200
Metairie, LA 70002

     COUNSEL FOR PLAINTIFF/APPELLANT

Robert I. Siegel
Andre Boudreaux
GIERER, LABORDE & DFAPEROUSE, LLC
701 Poydras St., Suite 4800
New Orleans, LA 70139

Paul L. Carriere
Austin J. Hight
FAVRET CARRIERE CRONVICH, LLC
650 Poydras Street, Suite 2300
New Orleans, LA 70130

Jeffrey A. Riggs
Kaylin E. Jolivette
LEWIS BRISBOIS BISGAARD & SMITH, LLP
100 E. Vermilion Street, Suite 300

Lafayette, LA 70501

COUNSEL FOR DEFENDANTS/APPELLEES

**AFFIRMED**
**June 23, 2025**

*RML*

*PAB*

This is a tort suit for damages to immovable property—a boathouse. The boathouse's owner—Frank Scurlock ("Mr. Scurlock")—filed this suit against multiple defendants, including the following three:

(i)    the owner of a neighboring boathouse—Kurt Heitmeier ("Mr. Heitmeier");

(ii)    Mr. Heitmeier's insurer, QBE Specialty Insurance Co. ("QBE"); and

(iii)    A contractor who performed work on Mr. Heitmeier's boathouse, Sylvan Construction, Inc. ("Sylvan") (collectively "Defendants").[1]

Defendants each filed a peremptory exception of prescription. From the trial court's November 19, 2024 judgment sustaining Defendants' prescription exceptions and dismissing them from the suit, Mr. Scurlock appeals. For the reasons that follow, we affirm.

---

[1] This Court, in *Scurlock v. Heitmeier*, 24-0455 (La. App. 4 Cir. 2/4/25), ___ So.3d ___, 2025 WL 384286, affirmed the dismissal, on a summary judgment motion, of a fourth defendant, New Orleans Municipal Yacht Harbor Management Corporation.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 17, 2021, Mr. Scurlock filed this suit against Mr. Heitmeier.[2] In his petition, Mr. Scurlock stated that he owned the property located at 7816 Breakwater Drive in New Orleans, Louisiana, on which Boathouse No. 30 is located, and that Mr. Heitmeier owned the neighboring property located at 7814 Breakwater Drive, on which Boathouse No. 29 is located. Their neighboring boathouses are adjoining and share common piles that support their structures. Mr. Scurlock stated that Mr. Heitmeier acquired his property in 2015 and that he performed renovations to his boathouse commencing in 2017.

During Mr. Heitmeier's renovations, Mr. Scurlock averred that he "began noticing damage and shifting of his property." Mr. Scurlock further averred that "the damages became quite severe to the point of it breaking beams and supporting structure from the added weight on [Mr.] Heitmeier['s] structure." Mr. Scurlock stated that he was neither an engineer nor an architect and that "[c]ause was established by professionals [Mr. Scurlock retained] on February 13, 2020 when the [Gurtler Brothers Consultants, Inc. ("Gurtler Brothers")] report was released" (the "Gurtler Report"). The cause, according to Mr. Scurlock, was the added weight of the third-floor addition to Mr. Heitmeier's boathouse.

Mr. Scurlock subsequently filed a First Supplemental and Amending Petition in May 2022, adding as additional defendants, among others, QBE and Sylvan. Mr. Scurlock also filed a Second Supplemental and Amending Petition

---

[2] Also named as defendants in the original petition were Mr. Heitmeier's father, Robert Heitmeier; and Mr. Heitmeier's insurer, Eustis Insurance Inc. Both of these defendants were voluntarily dismissed.

adding another defendant.[3] After answering the petition, Defendants each filed a prescription exception. Meanwhile, Mr. Scurlock filed a Third Supplemental and Amending Petition (the "Third Petition"). In the Third Petition, Mr. Scurlock named no new defendants. QBE objected to Mr. Scurlock's filing of the Third Petition. The trial court set the rule to show cause on Mr. Scurlock's request to file the Third Petition and the hearing on Defendants' prescription exceptions for the same date.

At the hearing, Mr. Scurlock argued that he filed the Third Petition to address Defendants' pending prescription exceptions. Indeed, in the Third Petition, Mr. Scurlock averred that he "first learned that defendant, [Mr.] Heitmeier[,] caused damage to his boathouse upon receipt of the engineering report from [Gurtler Brothers] on February 13, 2020" and that he "timely filed his Petition for Damages on February 17, 2021 within a year from the date that he had actual or constructive knowledge of the cause of his damages." The trial court granted Mr. Scurlock leave of court to file the Third Petition.

As to the prescription exceptions, Mr. Scurlock advanced two arguments in support of his position that his claims against Defendants were not prescribed. First, he repeated the argument he made in his Third Petition—his lack of actual or constructive knowledge that Mr. Heitmeier's actions caused his damages until he received the Gurtler Report on February 13, 2021. Second, he argued that

---

[3] In the Second Supplemental and Amended Petition, Mr. Scurlock added Scottsdale Insurance Company as a defendant; Scottsdale was joined as Sylvan's insurer.

3

prescription had not commenced because this is a continuing tort. In support of his position, Mr. Scurlock called two witnesses—himself and an expert, Friedrich Gurtler ("Mr. Gurtler").

Mr. Scurlock testified that he renovated the inside of his boathouse in 2019 to pristine condition, but he only resided at his boathouse part-time. At that time, he also resided in Orlando, Florida. In late January 2020, he returned to New Orleans for several appointments and meetings. When he returned to his boathouse, he noticed there were cracks on the inside walls and separation of some floor planks. He described the conditions as glaring and the issues as substantial. The issues included cracking, separation and gaps between the tiles, sagging, and windows falling out of their casings. These personal observations of the damage prompted Mr. Scurlock to retain Gurtler Brothers. Mr. Scurlock denied knowing the cause of the damage until he received the Gurtler Report.

Mr. Gurtler—who the trial court qualified as an expert in civil engineering and as a licensed home inspector—was one of the two home inspectors who performed the February 4, 2020 inspection on Mr. Scurlock's boathouse. Mr. Gurtler's opinion, as stated in the Gurtler Report, was that the cracking within Mr. Scurlock's living area and the recent cracking and separations within his boathouse—Boathouse No. 30—were due to differential settlement of the boathouse and were "most likely due to the added weight of the third floor addition to Boathouse No. 29—Mr. Heitmeier's boathouse." Mr. Gurtler testified that, at the time of his inspection, the conditions were "visibly evident," noticeable, and

4

not hidden. While Mr. Gurtler could not opine as to how long the conditions had existed, he opined that the conditions he observed did not happen overnight.

Besides the testimony of the two witness, Mr. Scurlock introduced no other evidence. But, Defendants introduced, among other things, the following: (i) the Gurtler Report; (ii) another Gurtler Brothers' report dated February 26, 2020; and (iii) the written contract between Mr. Scurlock and Gurtler Brothers dated January 30, 2020. In the Gurtler Report, Mr. Gurtler observed:

> [Mr. Scurlock] indicated to us that [he] had purchased this boathouse in 2012 and that [he] had fully renovated and repainted the interior approximately one[-]year ago. [He] indicated that the boathouse to the left of [his] boathouse was demolished after Hurricane Katrina struck our area in 2005. Boathouse No. 29 at 7814 Breakwater Drive, abuts the right side of this boathouse, and a third floor was added above Boathouse No. 29 within the last 18 to 24 months. Subsequent to that construction and [his] renovation, [he] noted cracking in [his] boathouse and an increase in floor slopes.

Similarly, Mr. Gurtler, in the February 26, 2020 report, observed:

> We had inspected the subject property for you on February 4, 2020, to ascertain its structural condition at that time. You had indicated to us that a third floor was added above Boathouse No 29 in 2018 and that you had noted cracking in your boathouse and an increase in floor slopes along the right side of your property after that work.

Following the hearing, the trial court took the matter under advisement. Thereafter, the trial court rendered judgment sustaining Defendants' exceptions and dismissing Mr. Scurlock's claims against them. This appeal followed.

## DISCUSSION

Although Mr. Scurlock raises multiple issues,[4] the principal issue before us is whether the trial court erred in sustaining Defendants' exceptions. The standard

---

[4] Mr. Scurlock assigns as error the following:

of review of a trial court's ruling on a prescription exception turns on whether evidence is introduced at the hearing on the exception. *Wells Fargo Fin. Louisiana, Inc. v. Galloway*, 17-0413, pp. 7-8 (La. App. 4 Cir. 11/15/17), 231 So.3d 793, 800. Stated otherwise, "[a]ppellate review applicable to a prescription exception depends on the manner in which the exception is heard." *Templet v. State through DPSC*, 19-0037, p. 4 (La. App. 1 Cir. 11/15/19), 290 So.3d 187, 191. When the parties introduce evidence at the hearing on the exception, the trial court's findings

1. The trial court erred in failing to grant plaintiff additional time to amend his petition as allowed under La. C.C.P. Art. 934 to address the grounds of the objections pleaded by the exceptions of prescription and amend his petition.

2. The trial court erred in failing to rule that once it was determined that the petition was not prescribed on its face that the burden shifted to the defendants to prove prescription and defendants failed to meet this heightened standard.

3. The trial court erred in failing to find that the damages to his property were caused by the overbuilding of his neighbor when he obtained the February 13, 2020 report prepared by Gurtler Brothers Consultants, Inc.

4. The trial court erred in failing to find that the damages committed by Kurt Heitmeier and his contractor Sylvan, constitute a continuing tort, and that prescription has not commenced because the violations persist and have not been cured.

5. The trial court erred in failing to find that prescription did not begin to run as long as Kurt Heitmeier's boathouse remained in physical contact with plaintiff[']s boathouse, and Mr. Heitmeier's third floor was no longer enclosed so as to remove the excessive weight impacting both boathouses.

6. The trial court erred in failing to hold that prescription was interrupted by the periodic sinking of the interior floor in Frank Scurlocks's boathouse as shown by readings taken by Gurtler Brothers Consultants on February 4, 2020 (-6.8"), February 25, 2021 (-8.8") and September 23, 2021 (-9.1").

7. The trial court erred in failing to refer the exceptions of prescription to be decided by the jury after a trial of the merits when the evidence on prescription and evidence on the merits are interrelated factual issues.

8. The trial court committed manifest error in failing to allow the jury to decide the factual question as to when Frank Scurlock first learned that the damages to his boathouse were caused by the overbuilding of his neighbor, Kurt Heitmeier.

9. The trial court erred in failing to rule that prescriptive statutes are strictly construed against prescription.

of fact on the prescription issue are subject to the manifest error standard of review. *See Carter v. Haygood*, 04-0646, p. 9 (La. 1/19/05), 892 So.2d 1261, 1267. Given that a hearing was held on Defendants' exceptions at which witnesses testified and evidence was introduced, it is undisputed that the manifest error standard of review applies.

Ordinarily, the defendant—the party asserting a prescription exception— bears the burden of proof. *Engine 22, LLC v. Land & Structure, LLC*, 16-0664, 16-0665, p. 5 (La. App. 4 Cir. 4/5/17), 220 So.3d 1, 5. But, when the plaintiff's claim is prescribed on the face of the petition, the burden shifts to the plaintiff. *Id*. The trial court's finding that Mr. Scurlock's petition is not prescribed on its face is undisputed;[5] thus, the burden remained on Defendants to prove Mr. Scurlock's claims against them are prescribed.

"[P]rescriptive statutes are strictly construed against prescription and in favor of the obligation sought to be extinguished; thus, of two possible constructions, that which favors maintaining, as opposed to barring, an action should be adopted." *Carter*, 04-646, p. 10, 892 So.2d at 1268. The applicable prescriptive period is determined by the character of the action pled in the petition.

---

[5] In addressing this issue, the trial court, in its written reasons for judgment, observed:

> The first issue addressed by the court is whether the Petition is prescribed on its face. Defendant asserts that the while Plaintiff filed suit on 2-17-21, he pleads in his Petition that "cause was established by professionals on February 13, 2020, when the Gurtler report was released . . ." . . . Considering the law and evidence, the court finds that the Petition is not prescribed on its face as February 13-16, 2021 were legal holidays. Specifically, February 13, 2021 was a Saturday; February 14, 2021 was a Sunday; February 15, 2021 was President's Day; and February 16 was Mardi Gras. [*See* La. C.C.P. article 5059.] As the Petition is not prescribed on its face, Defendants have the burden of proving that the suit is prescribed.

*Starns v. Emmons*, 538 So.2d 275, 277 (La. 1989). The trial court's finding that the governing prescriptive period is the one-year delictual period codified in La. C.C. arts. 3492 and 3493 (now repealed) is undisputed.[6]

The principal, disputed issue is whether the trial court correctly found that Defendants met their burden of proving that Mr. Scurlock's claims against them were prescribed. On appeal, as before the trial court, Mr. Scurlock raises two arguments in support of his position that his claims against Defendants are not prescribed—lack of actual or constructive notice and the continuing tort doctrine. Mr. Scurlock also raises two subsidiary, procedural issues—the trial court's failure to allow him leave to amend and its failure to defer the prescription exceptions to the merits. In addressing these issues, we divide our analysis into the following four sections—actual or constructive notice; continuing tort doctrine; deferring prescription exception to the merits; and denying leave to amend petition.

**Actual or Constructive Notice**

Rejecting Mr. Scurlock's actual or constructive notice argument, the trial court, in its written reasons for judgment, observed:

> [Mr. Scurlock] asserts that . . . prescription did not commence until he learned in Mr. Gurtler's report of 2-13-20 that the issues with his boathouse were caused by the weight of the additions from Mr.

---

[6] At the time Mr. Scurlock's claim arose, delictual actions were subject to a liberative prescriptive period of one year. *See* La. C.C. arts. 3492 and 3493 (now repealed). In 2024, the Louisiana Legislature repealed the one-year prescriptive period for delictual actions and replaced it with a two-year prescriptive period. *See* La. C.C. arts. 3493.1 and 3493.2 (effective July 1, 2024). But, the Legislature made the change in the delictual prescriptive period prospective only to actions arising after July 1, 2024. *See* 2024 La. Acts, No. 423, §§ 1 and 2 (providing that the extended period "shall be given prospective application only and shall apply to delictual actions arising after the effective date of this Act" and that "[t]his Act shall become effective on July 1, 2024"). Hence, the one-year prescriptive period, codified in former La. C.C. arts. 3492 and 3493, applies here.

Heitmeier's renovated and enlarged structure." . . . However, La. C.C. article 3493 provides that when damage is caused to immovable property, the one year prescriptive period commences to run from the day the owner of the immovable acquired, or should have acquired, knowledge of the damage—not the date that the cause of the damages is determined. In this case, [Mr. Scurlock] himself testified that he acquired knowledge o[f] the damage in January, 2020 and this prompted him to contact Gurtler Brothers. As [Mr. Scurlock] did not file this suit until February 17, 2021—over a year after he acquired knowledge of his damages—the court finds that his claims against Defendants . . . are prescribed.

While Mr. Scurlock maintains that he did not discover the cause of his damages until he received the Gurtler Report, the trial court correctly concluded that this is not the standard under La. C.C. art. 3493 (now repealed).[7] "[E]videntiary confirmation of a cause" is a "level of certitude" that "is not a prerequisite to the commencement of prescription." *Oil Ins. Ltd. v. Dow Chem. Co.*, 07-0418, p. 9 (La. App. 1 Cir. 11/2/07), 977 So.2d 18, 24. "Prescription commence[s] to run when the plaintiff ha[s] sufficient knowledge to put him on inquiry and on his guard to ascertain the true facts. (He then has one year to obtain all information and file suit.)." *Pachi v. Kammer*, 130 So.2d 417, 421 (La. App. 4th Cir. 1961). *Pachi* is illustrative.

---

[7] "In cases involving property damage, the fourth category of *contra non valentem*, otherwise known as the 'discovery rule,' is encompassed in the prescriptive period proscribed by La. C.C. art. 3493 [now repealed], as both essentially suspend prescription until the plaintiff knew, or reasonably should have known of the damage." *Marin v. Exxon Mobil Corp.*, 09-2368, 09-2371, p. 12 (La. 10/19/10), 48 So.3d 234, 245. Focusing on property damage claims, the Supreme Court in *Marin* observed that "knowledge sufficient to start the running of prescription is the acquisition of sufficient information, which, if pursued, will lead to the true condition of things." *Id.*, 09-2368, 09-2371, p. 14, 48 So.3d at 246 (internal citation and quotation omitted). "This date has been found to be the date the damage becomes apparent." *Id.* Ultimately, the resolution of the constructive notice issue turns on "the reasonableness of the plaintiff's action or inaction in light of his education, intelligence, and the nature of the defendant's conduct." *Id.*, 09-2368, 09-2371, p. 15, 48 So.3d at 246.

9

*Pachi* was a tort suit for property damages. The plaintiff sued the contractor who demolished the slab of a church building located on property adjacent to plaintiff's building. The contractor's construction activity allegedly caused damage to the plaintiff's property—cracked inside walls and ceilings and cracked exterior finish and foundations. The last day of the contractor's construction activity was December 23, 1953. The plaintiff filed suit over one year later on December 29, 1954. *Id.*, 130 So.2d at 418-19. Opposing the contractor's prescription exception, the plaintiff, in *Pachi*, contended that his delay in discovering the damage to his property was reasonable. The plaintiff testified that "he did not notice any damage until January 19, 1954; that he then called in a contractor to estimate the damage and received the estimate on February 9, 1954"; and that "he actually did not learn the full extent of his damage until April 1954, when he had another estimate made by an architect." *Pachi*, 130 So.2d at 419.

Finding the plaintiff's arguments lacked merit, this Court, in *Pachi*, cited the plaintiff's testimony that while the construction activity was taking place, the plaintiff personally experienced the effects of shaking "as if in an earthquake or tornado." 130 So.2d at 420. This Court observed that the plaintiff "had sufficient knowledge to put him on inquiry and this is sufficient to start the running of prescription." *Id*. Such is the case here.

The record reflects, as the trial court found, that Mr. Scurlock had sufficient knowledge to put him on inquiry no later than later January 30, 2020, when he personally observed the damage to his boathouse and contemporaneously hired

Gurtler Brothers. It is Mr. Scurlock's actual knowledge of the damage that prompted him to retain Gurtler Brothers. Paraphrasing *Pachi*, Mr. Scurlock "then has one year to obtain all information and file suit." 130 So.2d at 421. Mr. Scurlock's argument regarding lack of discovery of the cause of his damage is unpersuasive.

**Continuing Tort Doctrine**

Rejecting Mr. Scurlock's continuing tort argument, the trial court, in its written reasons for judgment, observed that "a continuing tort requires continual acts—not continual effects and damages." *See Hogg v. Chevron USA, Inc.*, 09-2632 (La. 7/6/10), 45 So.3d 991. The trial court concluded that "there is no evidence that the renovation work on . . . Mr. Heitmeier's boathouse continued."

The application of the continuing tort doctrine is a case-by-case, factual determination. *See FIE, LLC v. New Jax Condo Ass'n*, 16-0843, 17-0423, p. 28 (La. App. 4 Cir. 2/21/18), 241 So.3d 372, 394.[8] The Supreme Court recently enumerated a trio of principles governing the determination of whether the continuing tort doctrine applies:

- A continuing tort requires the operating cause of the injury be a continuous one which results in continuous damages[;[9]]

---

[8] In *FIE*, this Court observed that "plaintiffs established a pattern of negligent conduct by New Jax and that cumulative, continuous tortious conduct gave rise to successive damages from 2009 until the roof was successfully repaired in 2015." 16-0843, 17-0423, p. 30, 241 So.3d at 394. Under those facts, this Court found the continuing tort doctrine applied.

[9] Distinguishing an ordinary tort from a continuing tort, the Louisiana Supreme Court has cited the distinction, rooted in property law, between continuous and discontinuous operating causes. *Tujague v. Atmos Energy Corp.*, 442 F.Supp.2d 321, 322 (E.D. La. 2006). The distinction has been explained as follows:

[W]here the operating cause of injury is a continuous one and gives rise to successive damages, prescription dates from the cessation of the wrongful conduct causing the damage. However, in cases where property has been injured or

11

- The alleged injury-producing conduct must be overt, persistent, and ongoing[;[10] and]

- A continuing tort is occasioned by unlawful acts, not the continuation of the ill effects of an original, wrongful act.[[11]]

*Winesberry v. St. Bernard Par. Gov't*, 24-0166 (La. App. 4 Cir. 12/17/24), ___

So.3d ___, 2024 WL 5134474, *writ granted, decision rev'd*, 25-00065, p. 1 (La.

4/15/25), ___ So.3d ___, ___, 2025 WL 1111422, *1 (internal citations and

quotations omitted, and reformatted).

This case stems from a dispute between two neighbors regarding

construction performed by one neighbor—Mr. Heitmeier—that allegedly damaged

the property of the other neighbor—Mr. Scurlock. A similar dispute between

neighbors involving a prescription issue was presented in *Brecheen v. Skok*, 2022-

0624 (La. App. 1 Cir. 12/22/22), 367 So.3d 716. We find, as Defendants contend,

that *Brecheen* is instructive here.

---

damaged, and the continuing tort theory is inapplicable, either because the operating cause of the injury is discontinuous or because the damages are not successive, prescription runs from the date that knowledge of such damage was apparent or should have been apparent to the injured party.

*Crump v. Sabine River Authority*, 737 So.2d 720, 726 (La. 1999) (citing A.N. Yiannopoulos, PREDIAL SERVITUDES § 63 (1983)); see also Frank L. Maraist and Thomas C. Galligan, LOUISIANA TORT LAW § 10.04 (2012) (observing that "if both the tortious conduct and the damages continue, the tort may be deemed a 'continuing' one and prescription may not begin to run until the wrongful conduct ceases").

[10] Simply stated, "[t]he inquiry is essentially a conduct-based one, asking whether the tortfeasor perpetuates the injury through overt, persistent, and ongoing acts." *Alexander v. La. State Bd. of Priv. Investigator Examiners*, 15-0537, 15-0708, p. 17 (La. App. 4 Cir. 2/17/17), 211 So. 3d 544, 557 (internal citations and quotations omitted).

[11] "When a defendant's damage-causing act is completed, the existence of continuing damages to a plaintiff, even progressively worsening damages, does not present successive causes of action." *In re Medical Review Panel for Claim of Moses*, 00-2643, p. 16 (La. 5/25/01), 788 So.2d 1173, 1183.

In *Brecheen*, the plaintiff alleged that the defendant—Skok—purchased neighboring property around January 2014; that Skok demolished the existing house on the property and elevated the site in preparation for construction of a new, substantially larger house; and that Skok's construction of the new house was completed "sometime in May of 2016." *Brecheen*, 22-0624, p. 5, 367 So.3d at 720. The plaintiff further alleged that Skok's construction of the new house caused an increase in storm water runoff to the plaintiff's property. *Brecheen*, 22-0624, p. 4, 367 So.3d at 719. The plaintiff admitted in her deposition that during the summer of 2015, she began having mudslides when it rained and that she noticed bulging in her walls, which she attributed to the construction of Skok's new house. Based on the evidence and the plaintiff's admissions, the court, in *Brecheen*, held that the plaintiff's suit, filed more than a year after she acquired knowledge of the damage to her property, was prescribed unless her claim constitutes a continuing tort. 22-0624, p. 4, 367 So.3d at 719.

Addressing the continuing tort issue, the court, in *Brecheen*, identified the operating cause of the alleged damage (the damage-causing conduct) as the construction of Skok's new house. *Brecheen*, 22-0624, p. 5, 367 So.3d at 719. The court observed that "[t]here would be no 'storm water runoff flowing rapidly from the Skok Property' without the construction of the new home." *Brecheen*, 22-0624, p. 5, 367 So.3d at 720. Stated differently, the court observed that "the construction of the new home, standing alone, is the cause of [P]laintiff['s] claimed continuing

damages." *Id*. Finding no continuing tort, the court emphasized that "the building of that residence was a discrete event, discontinuous in nature." *Id*.

As in *Brecheen*, the alleged operating cause of injury (the damage-causing conduct) here is a "discrete event, discontinuous in nature"—the addition of the enclosed third floor to Mr. Heitmeier's boathouse. In his petition, Mr. Scurlock avers that it is the weight from the enclosed third floor to Mr. Heitmeier's boathouse that caused the damages. Likewise, Mr. Scurlock and his expert, Mr. Gurtler, testified to the same. And, as in *Brecheen*, the alleged damage-causing conduct abated when the discrete construction event—the enclosure of the third floor of Mr. Heitmeier's boathouse—was completed.[12] Thus, the trial court did not err in finding that there is no continuing tort.

Mr. Scurlock also argues that Mr. Heitmeier's failure to repair or remove the enclosed third floor of his boathouse constitutes a continuing tort. In *Breechen*, the plaintiff made the same argument; the plaintiff argued that the continuing tort is Skok's ongoing failure to remedy the damage. Rejecting the plaintiff's argument, the court, citing *Crump v. Sabine River Authority*, 737 So.2d 720, 726 (La. 1999), observed that "it is well-settled that the breach of the duty to right a wrong and make the plaintiff whole cannot be a continuing wrong that suspends the running of prescription, as that is the purpose of any lawsuit and the obligation of every tortfeasor." *Brecheen*, 22-0624, p. 5, 367 So.3d at 720.

---

[12] Like in *Brecheen*, Mr. Scurlock admitted to having acquired knowledge of his damage more than one year before he filed this suit. The trial court found this knowledge was sufficient to trigger the running of the one-year prescriptive period under La. C.C. arts. 3492 and 3493 (now repealed).

Our determination that the continuing tort doctrine is inapplicable here is buttressed by the Supreme Court's holdings in *Winesberry* and *Crump*, discussed next.

*Winesberry*

In *Winesberry*, the plaintiff asserted a property damage claim stemming from flooding to her property. The flooding began after the defendant—St. Bernard Parish Government ("Parish")—constructed "hills" on adjoining property. The trial court sustained the Parish's prescription exception. On the plaintiff's appeal, this Court, citing *Lopez v. House of Faith Non-Denomination Ministries*, 09-1147 (La. App. 4 Cir. 1/13/10), 29 So.3d 680,[13] identified the operating cause of the plaintiff's damage as the "hills" created by the Parish's construction. Finding the continuing tort doctrine applied, this Court in *Winesberry* observed that prescription would not commence until the "hills" were removed. We, thus, vacated the trial court's judgment granting the prescription exception.

The Supreme Court granted the Parish's writ and, in a *per curiam*, reinstated the trial court's judgment granting the exception; the Supreme Court observed:

> [T]he alleged injury-producing conduct occurred in 2006, specifically defendant's alleged failure to properly grade the surface area over the drainage pipes, which resulted in "hills" that cause periodic flooding of plaintiff's property. This operative conduct, which occurred seventeen years before suit was filed, is not persistent, ongoing, or continuous. It occurred and ended in 2006. The periodic

---

[13] *Lopez* involved a building on defendant's land that was damaged by Hurricane Katrina and that eventually fell onto the plaintiffs' house. 09-1147, p. 1, 29 So.3d 680, 681. Thus, *Lopez* is a continuing trespass case. The trial court held that prescription began to run on the date the defendant's building first made contact with the plaintiffs' house. Reversing, this Court found the continuing tort doctrine applied and that prescription would not commence begin to run as long as the defendant's building remained in physical contact with the plaintiffs' house. 09-1147, pp. 7-8, 29 So.3d at 684. In *Lopez*, this Court found the defendant's failure to remove or to repair the original injury-causing object—a damaged building leaning onto the plaintiffs' house—constituted a continuing tort.

flooding of plaintiff's property is not the operative conduct; it is the continuing effect of that conduct.

*Winesberry*, 25-00065, p. 1, ___ So.3d at ___, 2025 WL 1111422, *1 (internal citations omitted). In so holding, the Supreme Court in *Winesberry* cited *Crump*, discussed next.

*Crump*

*Crump*, as a federal district court observed, is distinguishable from continuing trespass cases, such as the *Lopez, supra*, in the following manner:

> In *Crump*, there was no trespass on the plaintiff's land. Rather, there was a single tortious act, which was the digging of a canal on property that the plaintiff did not own. The resulting diversion of water from the plaintiff's property was a cause of progressively worsening damage but did not constitute a successive cause of action, and was not a continuing tort.

Tujague, 442 F.Supp.2d at 324. Likewise, the Supreme Court in *Winesberry* observed that in *Crump*, "[a]lthough [the] canal continuously diverted water from plaintiff's ox-bow, defendant's failure to prevent construction of [the] canal or remove it was not a continuing tort because 'the actual digging of the canal was the operating cause of the injury.'" 25-00065, p. 1, n.1, ___ So.3d at ___, 2025 WL 1111422, *1.

Recapping, in both the *Winesberry* and *Crump* there was a completed construction of a structure on adjoining property that was identified as the operating cause of the damages—in *Winesberry*, "hills"; in *Crump*, a canal.[14] In both cases, the Supreme Court found there was no continuing tort. By analogy,

_____

[14] The Supreme Court, in *Winesberry*, also cited *Griffin v. Drainage Comm'n of New Orleans*, 110 La. 840, 845, 34 So. 799, 801 (1903); the Supreme Court observed that, in *Griffin,* it was held that "[e]xcavation of drainage conduit near a building, which was eventually condemned due to shifting foundation caused by drainage conduit, was not a continuing tort 'where the operating cause of the injury is not . . . a continuing one . . . , but [was] an original wrongful injury.'" *Wineberry*, 25-00065, p. 1, n.1, ___ So.3d at ___, 2025 WL 1111422, *1.

here there is a completed construction of a structure on adjoining property[15]—the third-floor enclosed addition to Mr. Heitmeier's boathouse—and there is no continuing tort. The trial court, thus, did not err in rejecting Mr. Scurlock's continuing tort argument.

**Deferring prescription exception to the merits**

Louisiana courts have recognized that "the judge's options in deciding the trial of a [prescription] exception include referring the exception to the merits in appropriate cases." *Short v. Griffin*, 95-0680, p. 2 (La. 6/16/95), 656 So.2d 635, 636. The jurisprudence has identified three factors that support a trial court's decision to defer a prescription exception to the merits:

- [T]he timeline of events is disputed;

- [L]engthy testimony as to the limitations, exception, or prescription issue appears necessary to determine factual or legal issues present; and

- [T]he evidence as to the limitations, exception, or prescription issue is intertwined with the merits of the underlying action.

---

[15] Mr. Heitmeier contends that this is not a trespass case; rather, this case involves one property owner's renovation of his property that an adjoining property owner alleges adversely affected his property. Here, the two properties—two adjoining boathouses—share pilings. Mr. Heitmeier emphasizes that each of the property owner has the right to use the shared pilings. Mr. Heitmeier also emphasizes that the enclosed third floor structure at issue is situated entirely on his property—Boathouse No. 29. Regardless, the Supreme Court observed in *Hogg v. Chevron USA, Inc.*, 09-2632, p. 17 (La. 7/6/10), 45 So. 3d 991, 1003-04, that whether a trespass exists is not dispositive of a continuing tort issue:

> [A]ll trespasses are not, by definition, continuous acts giving rise to successive damages. To determine whether a trespass is continuous, a court must engage in the same inquiry used to determine the existence of a continuing tort; *i.e.*, the court must look to the operating cause of the injury sued upon and determine whether it is a continuous one giving rise to successive damages, or whether it is discontinuous and terminates, even though the damage persists and may progressively worsen.

180 AM. JUR. TRIALS 123, § 46 (originally published in 2023) (citing *Velocity Agency, LLC v. St. John*, 21-658, p. 4 (La. App. 5 Cir. 12/2/21) (*unpub.*), 2021 WL 5831407, at *3).

Conversely, "[w]here the facts relating to the exception of prescription are separate and distinct from the alleged facts relating to the potential liability of the defendants, courts have found that delaying trial of the exception [is] inappropriate, as it does not serve judicial economy." *Holmes v. City of New Orleans*, 24-0047, p. 9 (La. App. 4 Cir. 7/16/24), 401 So.3d 731, 737 (citations omitted).[16] Such is the case here.

The timeline of events is not disputed.[17] Lengthy testimony on Defendants' prescription exceptions is not necessary; indeed, only two witnesses were called at the hearing on Defendants' exceptions. The evidence on the prescription

---

[16] In *Holmes*, we found that the trial court erred in failing to defer the exception to the merits; in so finding, we observed that "the evidence required to resolve the exception of prescription is so intertwined with the evidence required to prove the merits of Holmes' property damage claims against the public entities and respective contractors that judicial economy is not served in adjudicating prescription at this juncture. 24-0047, p. 10, 401 So.3d at 738.

[17] The timeline is as follows:

- 2018—Mr. Heitmeier added an enclosed third floor to his boathouse—Boathouse No. 29;

- Late January 2020—Mr. Scurlock noticed substantial damage to his boathouse—Boathouse No. 30—and contemporaneously contacted with Gurtler Brothers to have an inspection done;

- January 30, 2020—Mr. Scurlock signed a written contract with Gurtler Brothers for the inspection;

- February 4, 2020—Mr. Gurtler and another inspector conducted the inspection;

- February 13, 2020—The Gurtler Report was issued; and

- February 17, 2021—Mr. Scurlock filed this suit.

exceptions is minimal. The evidence on the exceptions is not intertwined with the merits of the underlying action. Indeed, at the hearing on the exceptions, the trial court reminded Mr. Scurlock's counsel, during counsel's questioning of Mr. Scurlock, that the merits were not before the court. The trial court, thus, did not abuse its discretion in declining to defer the prescription exceptions to the merits.

**Denying Leave to Amend Petition**

Mr. Scurlock's final argument is that the trial court erred in denying him leave to amend pursuant to La. C.C.P. art. 934.[18] The jurisprudence has recognized the following three principles that govern this issue.

- "It is well settled that the right to amend is not absolute and is subject to the trial court's vast discretion." *Ballanco v. Morvant*, 23-0526, p. 9 (La. App. 4 Cir. 1/17/24), 382 So. 3d 411, 417 (internal quotations and citations omitted);

- As the plain language of La. C.C.P. art. 934 mandates, the right to amend "is notably qualified by the restriction that the objections must be curable." *Whitney Nat'l Bank v. Jeffers*, 573 So.2d 1262, 1265 (La. App. 4th Cir. 1991); and

- An "[a]mendment is not permitted when it would constitute a vain and useless act." *DLN Holdings, L.L.C. v. Guglielmo*, 21-0640, p. 19 (La. App. 4 Cir. 6/29/22), 366 So.3d 461, 476 (internal quotations omitted).

Here, Mr. Scurlock has failed to demonstrate how, by amending the petition, he can cure the defect—prescription. Another amendment of the petition would be a vain and useless act. Mr. Scurlock has amended his petition three times. As

---

[18] La. C.C.P. art. 934 provides:

When the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court. If the grounds of the objection raised through the exception cannot be so removed, or if the plaintiff fails to comply with the order to amend, the action, claim, demand, issue, or theory shall be dismissed.

discussed elsewhere in this opinion, the trial court, over QBE's objection, granted Mr. Scurlock leave to file the Third Petition. Accordingly, we find that the trial court did not abuse its discretion by failing to allow Mr. Scurlock an opportunity to amend his petition for a fourth time.

## **DECREE**

For the foregoing reasons, the trial court's November 19, 2024 judgment is affirmed.

**AFFIRMED**